**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN N.S. CHEUNG, INC.,
          *Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA,
          *Defendant-Appellant.*

No. 07-35161

D.C. No.
CV-04-02050-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
July 10, 2008—Seattle, Washington

Filed September 23, 2008

Before: Richard R. Clifton and N. Randy Smith,
Circuit Judges, and Brian E. Sandoval,* District Judge.

Opinion by Judge Sandoval

*The Honorable Brian E. Sandoval, United States District Judge for the
District of Nevada, sitting by designation.

13457

**COUNSEL**

Eileen J. O'Connor, Assistant Attorney General, Teresa E. McLaughlin, Department of Justice, Kenneth W. Rosenberg, Department of Justice, for the defendant-appellant.

David J. Lenci and Michael K. Ryan of Kirkpatrick & Lockhart Preston Gates Ellis LLP of Seattle, Washington, for the plaintiff-appellee.

---

## OPINION

SANDOVAL, District Judge:

This appeal requires the interpretation of the statutory provisions providing for the recovery of interest on a wrongful levy judgment. Steven N.S. Cheung, Inc. (the "Company") filed an action against the government pursuant to 26 U.S.C. § 7426(a)(1)[1] alleging that its property had been wrongfully levied. The district court entered judgment in the Company's favor and ordered that the government pay the Company $1,434,573.76, plus interest. Pursuant to § 7426(g), the district court awarded interest at the overpayment rate established by § 6621, except that it did not give effect to the flush language of § 6621(a)(1). The flush language of § 6621(a)(1) provides for a one and a half point reduction in the overpayment rate "[t]o the extent that an overpayment of tax by a corporation . . . exceeds $10,000." The government appeals the district court's award of interest, arguing that the district court erred in failing to reduce the overpayment rate to the extent the wrongful levy judgment exceeded $10,000. We reverse and hold that the flush language of § 6621(a)(1) applies to wrongful levy judgments and therefore the district court should have given effect to the rate reduction described therein.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

Dr. Steven Cheung, an economics professor and consultant, formed the Company on July 5, 1977, as a Washington State

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (26 U.S.C.).

corporation. Originally, the Company issued 100 shares of stock, all of which were owned by Cheung. On July 1, 1994, Cheung transferred 49 of his shares to Linda Su, Ronald Cheung, and Cecile Cheung as joint tenants with the right of survivorship. On August 1, 1995, Cheung transferred another 49 shares to the same parties.

On February 5, 2003, pursuant to § 6861(a),[2] the Internal Revenue Service ("IRS") issued a jeopardy assessment against Cheung for income tax liability for the year 1993. The assessment identified Cheung's tax liability as $396,861, plus a penalty in the amount of $293,327 and statutory interest in the amount of $776,730, totaling $1,466,918. The same day, the IRS, believing the Company was a nominee of Cheung, issued and served a notice of jeopardy levy on the Company pursuant to § 6331(a).[3] Pursuant to the levy, the IRS collected $353,575.93 from a corporate checking account. On February 27, 2003, a second notice of jeopardy levy was served on the

---

[2]Section 6861(a) provides:

If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided by law), and notice and demand shall be made by the Secretary for the payment thereof.

[3]Section 6331(a) provides:

If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax . . . . If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

company, under which the IRS collected $708,985 from a corporate investment account. On May 8, 2003, the Company, in lieu of a forced liquidation of its real property assets, issued a check in the amount of $372,012.83, satisfying Cheung's remaining tax liability. In total, the IRS's levy efforts resulted in the collection of $1,434,573.76 from the Company.

On October 31, 2003, the Company filed an administrative claim for the return of funds improperly levied pursuant to § 6343(b).[4] The claim was denied. Thereafter, on September 29, 2004, the Company filed a complaint for recovery of wrongful levy pursuant to § 7426(a)(1).[5] A bench trial then commenced. At the conclusion of the government's case, the Company moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). The court granted the motion, finding that the Company's property had been wrongfully levied. The court then entered judgment in favor of the Company and ordered that the government pay the Company $1,434,573.76, "plus interest as provided by law."

---

[4]Section 6343(b) states in pertinent part:

If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

    (1) the specific property levied upon,

    (2) an amount of money equal to the amount of money levied upon, or

    (3) an amount of money equal to the amount of money received by the United States from the sale of such property.

[5]Section 7426(a)(1) states:

If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

A hearing was set to determine the appropriate amount of interest owed to the Company.

Section 7426(g) provides for the recovery of interest on a judgment of wrongful levy "at the overpayment rate established under section 6621." In the case of a corporation, § 6621(a)(1) provides that the overpayment rate is the sum of the "Federal short-term rate . . . plus . . . 2 percentage points." (Internal parenthesis omitted). The flush language of § 6621(a)(1) provides, however, for a one and a half point reduction in the overpayment rate "[t]o the extent that an overpayment of tax by a corporation for any taxable period . . . exceeds $10,000."

At the hearing, the parties disputed the applicability of the rate reduction described in the flush language. The Company argued that the plain meaning of the statute did not support a reduction in the overpayment rate because a wrongful levy is not an "overpayment of tax" as the term is understood under the Internal Revenue Code (the "Code"). The government disagreed, arguing that by applying the overpayment rate from § 6621 to interest recoverable on a wrongful levy judgment, Congress treated a wrongful levy as overpayment of tax for purposes of calculating the overpayment rate.

On January 5, 2007, the district court ruled in favor of the Company, holding that a wrongful levy is not an overpayment of tax within the meaning of § 6621(a)(1) and therefore that the overpayment rate on a wrongful levy judgment is calculated without reference to § 6621(a)(1)'s flush language. The court then awarded the Company $314,278.80 in interest through October 24, 2006, the date of entry of judgment. The court further ordered that the government pay additional interest at a *per diem* rate of $383.31 from October 24, 2006 onward, subject to change based upon the Federal short-term rate. On January 17, 2007, the district court awarded the Company attorney's fees and costs pursuant to § 7430,[6] but it

---

[6]Section 7430 provides for the recovery by the "prevailing party" of "reasonable litigation costs," including attorney's fees, "[i]n any . . . court

denied the Company's request for statutory damages made available by § 7426(h).[7] Following entry of final judgment, the government timely appealed the district court's interpretation of § 6621(a)(1).[8]

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over final judgments of the district courts pursuant to 28 U.S.C. § 1291. We review issues of statutory construction de novo. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 852 (9th Cir. 2007) (citing *SEC v. Gemstar TV Guide Int'l, Inc.*, 367 F.3d 1087, 1091 (9th Cir. 2004)).

## III.  ANALYSIS

[1] Whether the flush language of § 6621(a)(1) applies in the case of a wrongful levy judgment is a question of first impression. Because resolution of the issue turns on the interpretation of the statute, we begin with the language of the statute itself. *Ordlock v. C.I.R.*, 533 F.3d 1136, 1140 (9th Cir. 2008) ("The 'starting point in every case involving the construction of a statute is the language itself.' ") (quoting *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330 (1978)). " 'In ascertaining the plain meaning of a statute, the

---

proceeding which is brought by or against the United States in a connection with the determination, collection, or refund of any tax, interest, or penalty under [the Internal Revenue Code]."

[7]Section 7426(h) provides for statutory damages in an action brought pursuant to § 7426 "if . . . there is a finding that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of [the Internal Revenue Code]."

[8]The government does not appeal the district court's factual findings and conclusions of law as to whether the Company's property was wrongfully levied. Nor does it appeal the district court's award of attorney's fees and costs. For its part, the Company seeks its attorney's fees and costs associated with the instant appeal if it prevails. Because we hold in favor of the government, we need not reach this issue.

court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Id.* (quoting *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)). " 'Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end.' " *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007) (quoting *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000)). Where, on the other hand, "the words of a statute are not conclusive as to congressional intent, they should be placed in their proper context by resort to legislative history." *Ordlock*, 533 F.3d at 1140.

Section 7426(g) provides for the recovery of interest on a wrongful levy judgment "at the overpayment rate established under section 6621." Section 6621 states in pertinent part:

> §6621. Determination of rate of interest
>
> (a)   General Rule.—
>
> (1)   Overpayment rate.— The overpayment rate established under this section shall be the sum of —
>
> (A)   the Federal short-term rate determined under subsection (b), plus
>
> (B)   3 percentage points (2 percentage points in the case of a corporation)
>
> To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

Substituting   "overpayment"   for   "underpayment"   in § 6621(c)(3)(A), that provision reads, "The term 'large corpo-

rate [overpayment]' means any [overpayment] of a tax by a C corporation for any taxable period if the amount of such [overpayment] for such period exceeds $100,000."

According to the Company, the flush language of § 6621(a)(1) does not apply to wrongful levy judgments because a wrongful levy is not an "overpayment of tax." Thus, the Company states in its brief that it "did not pay, let alone overpay, any 'tax' when the IRS wrongfully and negligently seized its property." The government asserts, however, that whether an overpayment of tax occurred is irrelevant. It is the government's position that Congress, in applying the overpayment rate from § 6621 to wrongful levy judgments, expressed its intent to treat such judgments as if they were overpayments of tax for purposes of calculating the overpayment rate regardless of their true nature. We are persuaded by the government's position.[9]

[2] The principal question before us is not whether a wrongful levy *is* an overpayment of tax. Rather, the issue is whether, in calculating the overpayment rate in connection with a wrongful levy judgement, a rate reduction applies to the extent that the wrongful levy exceeds $10,000. To be sure,

---

[9]In advancing its interpretation of the relevant statutory provisions, the government urges us to strictly construe the statutory language at issue because in its view it represents a waiver of sovereign immunity from an award of interest. There is no dispute that § 7426(g) constitutes a waiver of sovereign immunity from an award of interest. *See Library of Congress v. Shaw*, 478 U.S. 310, 319 n.6 (1986) (listing § 7426(g) as a waiver of immunity as to an award of interest), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. However, insofar as § 6621(a)(1) is concerned, that provision is not a waiver of immunity from an award of interest. Rather, it governs the manner in which the interest available on, among other things, a wrongful levy judgment is calculated. We therefore decline to strictly construe § 6621(a)(1). *See J.F. Shea Co. v. United States*, 754 F.2d 338, 340 (Fed. Cir. 1985) (holding that the assertion of sovereign immunity is "irrelevant . . . where the dispute concerns not *whether* interest runs against the United States but *how* the interest is to be calculated.").

a levy can be understood as the imposition of a tax. *See* 26 U.S.C. § 6331(a) ("If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy . . . . If the Secretary makes a finding that the collection of such tax is in jeopardy . . . collection thereof by levy shall be lawful without regard to the 10-day period provided in this section."); *Black's Law Dictionary* 919 (8th ed. 2007) (defining levy as "[t]he imposition of a fine or tax; the fine or tax so imposed."); 26 U.S.C. § 6331(b) (The term "levy" "includes the power of distraint and seizure by any means."). Thus, one who has been wrongfully levied can be thought of as having been subject to an improper exaction. *See* 26 C.F.R. § 301.7426-1(b) ("A levy is wrongful against a person (other than the taxpayer against whom the assessment giving rise to the levy is made), if . . . the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter.") However, the satisfaction of a levy occurs upon the execution of the levy. *See* 26 U.S.C. § 6331(d) (outlining the procedural prerequisites for the imposition of a levy generally). It is not the consequence of the voluntary act of payment, which more aptly describes an overpayment of tax.

That notwithstanding, in determining the appropriate method of calculating the overpayment rate as it applies to a wrongful levy judgment, it is not necessary to reach a conclusion as to whether a wrongful levy is or is not an overpayment of tax. Instead, we need only determine how Congress intended to treat wrongful levy judgments when it subjected them to the overpayment rate in § 6621(a)(1). As to this issue, we conclude that the plain meaning of the statute controls.

**[3]** Section 7426(g) provides for the recovery of interest on a wrongful levy judgment "at the overpayment rate described in section 6621." Section 6621 provides a straightforward method for calculating the overpayment rate: in the case of a corporation, the overpayment rate equals the federal short-

term rate plus two percent, except "to the extent that an over-payment of tax exceeds $10,000" the overpayment rate is the federal short-term rate plus one half of one percent. 26 U.S.C. § 6621(a)(1). By subjecting wrongful levy judgments to the overpayment rate as described in § 6621, Congress expressed its intent to give effect to the whole of § 6621(a)(1) in calculating the overpayment rate, including the rate reduction articulated in § 6621(a)(1)'s flush language. That reduction can only be given effect if a wrongful levy judgment is treated as an overpayment of tax for purposes of calculating the overpayment rate. Thus, in providing for the consideration of the whole of § 6621 in determining the overpayment rate applicable in the case of a wrongful levy judgment, Congress indicated its intent to apply a one and a half point reduction in the overpayment rate to the extent that a wrongful levy judgment exceeds $10,000.

This conclusion is consistent with Congress's application of the overpayment rate in other contexts. 30 U.S.C. § 1721 governs the terms and conditions of oil and gas leases, including the rate of interest owed on overpayments of royalties. More specifically, § 1721(h) provides for the payment of interest "on any overpayment . . . at the rate obtained by applying the provisions of subparagraphs (A) and (B) of section 6621(a)(1) of Title 26, *but determined without regard to the sentence following subparagraph (B) of section 6621(a)(1)*," *i.e.*, without regard to the flush language. (emphasis added).

**[4]** In eliminating the application of § 6621(a)(1)'s flush language, Congress expressed its intent to apply the overpayment rate without regard to the reduction described there. Congress thus elected not to treat overpayments of royalties as overpayments of tax for purposes of calculating the overpayment rate. Had Congress wanted to avoid the application of § 6621(a)(1)'s flush language to wrongful levy judgments, it could have employed similar language.

The Company argues that any reliance on § 1721(h) as probative of Congress's intent in this case is misplaced. According to the Company, because both § 1721(h) and § 6621 apply to "overpayments," it was necessary for Congress to explicitly preclude the application of the flush language's rate reduction insofar as it intended to do so. Otherwise, the Company says, § 6621(a)(1)'s flush language would have triggered a reduction in the overpayment rate not because Congress elected to treat overpayments of royalties like overpayments of tax by subjecting overpayments of royalties to the overpayment rate, but because an overpayment of royalty falls within the definition of an overpayment of tax.[10] We disagree.

**[5]** There is no question that the overpayment of a royalty is the result of an erroneous voluntary payment, whereas a wrongful levy is executed by the government. Nonetheless, a royalty payment represents the government's share of the profits from a lease, not a tax. *See* 30 U.S.C. § 1702(14) (defining "royalty" as "any payment based on the value or volume of production which is due to the United States . . . on production of oil or gas from the Outer Continental Shelf, Federal, or Indian lands, or any minimum royalty owed to the United States . . . under any provision of a lease."). Thus, the overpayment of a royalty is no more an overpayment of tax than a wrongful levy. As such, the flush language of § 6621(a)(1) would only apply to reduce the overpayment rate insofar as Congress expressed its intent to treat an overpayment of royalties like an overpayment of tax for purposes of calculating the overpayment rate. Accordingly, we cannot conclude that Congress's motivation in explicitly precluding

---

[10]The Company also asserts that the government is barred from citing Congress's reference to § 6621 in § 1721(h) in support of its argument on appeal because it did not do so in the district court. However, as the government points out, "[w]here, as here, the question presented is one of law, we consider it in light of 'all relevant authority,' regardless of whether such authority was properly presented in the district court." *Ballaris v. Wacker Siltronic, Corp.*, 370 F.3d 901, 908 (9th Cir. 2004) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

the application of § 6621(a)(1)'s flush language in § 1721(h) arose out of the fact that the flush language otherwise would have applied, because an overpayment of royalty falls within the plain meaning of "overpayment of tax." Instead, it is more likely that Congress explicitly precluded the application of § 6621's flush language in § 1721(h) in order to avoid signaling its intent to treat overpayments of royalties like overpayments of tax.

The Company asserts that our decision in *Flores v. United States*, 551 F.2d 1169 (9th Cir. 1977), counsels against today's holding. In *Flores*, we addressed the issue of which party bears the burden of persuasion under § 7426 as to whether a levy is wrongful. *Id.* at 1173-75. In the course of holding that the government bears the burden, we noted that "particular sections of the Internal Revenue Code, as they apply to persons who are differently situated, serve different purposes." *Id.* at 1173. According to the Company, *Flores* demands that we treat victims of wrongful levies differently than those who overpay their taxes. The Company asserts that those whose property is wrongfully levied are differently situated from those who overpay their taxes in that those that are wrongfully levied have been victimized by a mistake of the IRS and thus are entitled to interest at a higher rate.

We are mindful of our decision in *Flores*. And we agree that in applying the Code we must take into account the fact that different provisions serve different purposes insofar as they are applied to differently situated persons. However, in this case, Congress has clearly expressed its intent to treat those whose property has been wrongfully levied similarly to those who have overpaid their taxes, regardless of whatever distinctions the Company may perceive as between the two. Accordingly, we are bound to apply the statute as written. *See Texaco, Inc. v. United States*, 528 F.3d 703, 710 (9th Cir. 2008) ("Once Congress has spoken, the court cannot revise a statue to promote a more equitable consequence.").

Finally, the Company argues that the legislative history of both § 7426 and § 6621 militates against our decision. We need not reach the issue, however, because we conclude that the plain meaning is dispositive. *See Molski*, 481 F.3d at 732 (" 'Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end.' ") (quoting *Botosan*, 216 F.3d at 831).

## IV.  CONCLUSION

**[6]** The district court's calculation of the overpayment rate was erroneous. The plain meaning of § 7426 and § 6621 compel the conclusion that Congress intended to treat wrongful levy judgments like overpayments of tax for purposes of calculating the overpayment rate. Therefore, we reverse and remand for proceedings consistent with this opinion.