**In re Damian Gerald CHAPMAN and Melissa Ann Chapman, Debtors.**

No. BKY 0835303.

United States Bankruptcy Court,
D. Minnesota.

June 10, 2010.

Craig W. Andersen, Craig W. Andersen Law Office, Bloomington, MN, for Debtors.

Jasmine Z. Keller, Minneapolis, MN, Michael J. Iannacone, Lake Elmo, MN, Trustees.

ORDER DENYING MOTION OF UNITED STATES TRUSTEE FOR DISMISSAL UNDER 11 U.S.C. § 707(b)(1)

GREGORY F. KISHEL, Bankruptcy Judge.

This case came on before the Court for hearing on the motion of the United States Trustee for dismissal pursuant to 11 U.S.C. §§ 707(b)(1)-(3). The United States Trustee appeared by his attorney, Sarah J. Wencil. The Debtors appeared by their attorney, Craig W. Andresen. The Debtors' response raised an issue that appeared to go to the fundamental availability of relief under § 707(b) in this case, as it was then postured. Further proceedings on the motion were held in abeyance, to determine how best to address this issue. Analysis of the relevant statutory text revealed that the issue was dispositive. This order sets forth the disposition and its supporting rationale.

The Debtors in this joint case are husband and wife. They started this case by filing a voluntary petition under Chapter 13 on October 10, 2008. After one preconfirmation modification, their plan was confirmed on January 29, 2009. In the early fall of 2009, relief from stay was granted to two secured parties, the holder of a mortgage against the Debtor's homestead and the creditor on the one auto loan that was treated under their plan. The Debtors had not contested either motion. On October 16, 2009, the Debtors converted this case to one under Chapter 7.

On December 28, 2009, the U.S. Trustee filed a motion for dismissal under 11 U.S.C. § 707(b)(1). He cited grounds under 11 U.S.C. § 707(b)(2) (invoking the presumption of abuse that arises from that statute's so-called "means test" for relief under Chapter 7) and 11 U.S.C. § 707(b)(3) (maintaining that the "totality of circumstances" of the Debtors' income, expenses, debt structure, and history in bankruptcy evidenced an abuse of Chapter 7 remedies).

■ Both of the U.S. Trustee's theories implicated substantial issues of fact. However, in their response the Debtors raised an issue purely of law: whether § 707(b)(1) even applies in a case that had been commenced via a petition under Chapter 13, and was converted to one under Chapter 7 post-petition. As it turns out, the issue is one of simple statutory construction, resolved by reference to the face of the governing statutes. And, it has been explored by other courts in an appreciable number of published decisions that are readily-accessible and reasonably clear in their logic. Thus, further briefing or argument from the parties is not warrant-

ed; the record at bar is an adequate platform for a decision now.

The relevant statutory text that creates the remedy now invoked is:

> After notice and a hearing, the court, ... on a motion by the United States trustee, ... may dismiss a case *filed by an individual debtor under this chapter* whose debts are primarily consumer debts, ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7].

11 U.S.C. § 707(b)(1) (emphasis added). The italicized language creates the dispute at bar; the question is the meaning of the phrase "filed ... under this chapter," i.e., Chapter 7, the chapter of the Bankruptcy Code in which the governing section, § 707(b), is located.

 The issue is created by a potential inconsistency in statutory language, specifically in the verbs that are used in participle form to identify signal events for the application of the Code's substantive provisions.[1] The inconsistency is that, in the direct sense of the nouns and verbs in the Code's general structural provisions, a bankruptcy "case" is not "filed," in and of itself.[2] Rather, a bankruptcy case is "commenced," via the *filing* of a specific *document*, a discrete statement of an intention to invoke bankruptcy remedies that is called a "petition." 11 U.S.C. § 301(a).[3] Then, via something like the tertiary part of a syllogism, "[t]he *commencement* of a voluntary case under a chapter of [the Bankruptcy Code] constitutes an order for relief under such chapter." 11 U.S.C. § 301(b) (emphasis added).[4]

A consistent vocabulary, with precise linkages and meaning, is the basis of these provisions—springing as they did from the carefully-balanced craftsmanship that produced the Bankruptcy Code's original, 1978 enactment. That consistency is underlined by the text of 11 U.S.C. § 348(a), which is the same today as when enacted

1. This inconsistency predates the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA"). The language in question, "a case filed by an individual debtor under this chapter," was a part of the original text of § 707(b), enacted by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355, 381. The preexisting inconsistency of the text has gained a new prominence and momentum with the advent through BAPCPA of the so-called "means test" of § 707(b)(2), and its a strong presumption of abuse upon an abstracted, numerically-driven calculation of surplus income.

2. As a concept, the bankruptcy "case" is best understood as an *ongoing*, intangible procedural framework for the invocation of federal jurisdiction over the basic functions of the bankruptcy process. *In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 980 (D.Minn. 1989); *In re Arctic Enters., Inc.*, 68 B.R. 71, 76 n. 4 (D.Minn.1986); *In re Northwest Cinema Corp.*, 49 B.R. 479, 480 n. 4 (Bankr. D.Minn.1985). Under the Bankruptcy Code's structure, the "case" is not itself a "proceeding"; but it furnishes a platform with the potential of jurisdiction for the commencement of many sorts of proceedings, administrative and judicial. *In re Northwest Cinema Corp.*, 49 B.R. at 480 n. 4.

3. This citation is to the statute that governs the commencement of a *voluntary* bankruptcy case for an individual debtor. Two other classes of cases are also "commenced" by the filing of a petition: a voluntary case by joint (husband and wife) individual debtors, 11 U.S.C. § 302(a), and an involuntary bankruptcy case, 11 U.S.C. § 303(b).

4. In an involuntary case, the order for relief is not entered until after the debtor has had an opportunity to controvert the petition, i.e., to challenge the request of the petitioning creditor(s) to put the debtor into bankruptcy other than by the debtor's volition. If the debtor answers and resists the petition, the court must hold a trial and then must make certain findings before it can issue an order for relief. 11 U.S.C. § 303(h).

in 1978. This paragraph opens a section that governs the effect of the conversion of a case between the governance of different chapters of the Code; and it provides as follows:

> Conversion of a case from a case under one chapter of [the Bankruptcy Code] to a case under another chapter of [the Bankruptcy Code] constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a) (emphasis added).[5]

So, on the sense of the basic, structural provisions of the Bankruptcy Code alone, the participle-modifier "filed" in the prefatory text of § 707(b) unequivocally signifies the act of *initiating* the bankruptcy process, "under" a particular chapter of the Code as requested in the petition. The case then is propelled forward under that chapter via a figurative "order" for such relief that is deemed to have been issued at the instant of commencement. The case remains *pending* under that chapter, i.e., substantively governed by the specific provisions of the chapter and funneled through the chapter's own complex of remedies, until its administration is completed or until it is converted to a case under another chapter. If it is converted to a case under another chapter, the new figurative order directing that new track of remedies, deemed to have been issued coincident with the event of conversion, "does not effect a change in the filing of the petition, the commencement of the case, or the order for relief," per § 348(a). And, the reference just quoted to the unchanged order for relief must be read as

the case's *original* order for relief, or the language makes no sense in context.

■ This textual backdrop from the Code's general governance is so clear that it arguably obviates any inquiry into the sense of the specific provision, § 707(b)(1), or its implications in light of the policy underlying § 707(b). The language in question is from a specific provision, § 707(b), in a comprehensive enactment, the Bankruptcy Code; but it has its reference points in general provisions of the same enactment, and the consistency of the general provisions makes the meaning of the specific provision unambiguous in context. All of these parts of the Code are appropriate sources from which to identify "the plain meaning" of a statute, and specific language "must always be read in its proper context." *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). *See also Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole ....") When that exercise is complete, the courts' inquiry is finished and the language is to be enforced according to its plain meaning. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

This is the case with the language at bar, under the analysis above. The only exception is "the 'rare case' ... that [would] produce[ ] an 'absurd result' " from the application of the text's plain meaning. *Owner–Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 556 F.3d 690, 694 (8th Cir.2009). But if one goes through that further exercise, one cannot identify an "absurd result" so out of kilter with the

---

5. The text references certain exceptions to its governance, as set forth in §§ 348(b)-(c), but the reference is deleted from this quotation. A motion under § 707(b) is not among the enumerated exceptions.

purpose of § 707(b), even post-BAPCPA; so, the above construction of the word "filed," in the fixed, narrow context of § 707(b) alone, is still fully sustainable.

The reason is as follows. In this district, at least, the U.S. Trustee premises almost all motions under § 707(b) on a general fact-based proposition: where a debtor has the ability to pay something of substance to unsecured creditors over a span of future time, allowing that debtor to proceed to an unqualified, general discharge of unsecured debt would be "an abuse of the provisions of" Chapter 7. This proposition is used under either substantive prong of the statute. When the U.S. Trustee invokes § 707(b)(2), the U.S. Trustee relies entirely on the "deeming" effect of that statute's means test and presumption, triggered with little reference to the debtor's actual financial circumstances, current and future.[6] The other prong, § 707(b)(3), is phrased broadly enough to prompt its invocation on a comparable showing, though on case-specific facts rather than by attributing uniform financial characteristics to the debtor. The U.S. Trustee does not hesitate to do that.[7]

Where a debtor is "coming in fresh" into bankruptcy (i.e., he is seeking Chapter 7 relief in the first instance, based solely on his and his counsel's anticipatory analysis under the means test and the "totality" approach), the field should be relatively open for a properly-founded challenge to that analysis via a motion under § 707(b)(1). After all, there would be nothing in the debtor's actual past experience to corroborate his assertion, that he simply could not perform under the post-BAPCPA regime of Chapter 13 and should be allowed the full benefit of Chapter 7; and, the clear tenor of BAPCPA's amendments to § 707(b) is that the debtor's initial conclusion on this point is not entitled to any initial deference. Performed by a detached party like the U.S. Trustee, analysis between the bounding-points of the means test and 11 U.S.C. § 1325(b) may reveal something entirely different. Without actual experience in a repayment regimen under the bankruptcy process to rebut the thrust and conclusion of such analysis, the issues are to be aired in court as Congress intended.

**6.** *See In re Ellringer,* 370 B.R. 905, 909–910 (Bankr.D.Minn.2007) (noting that means test "will nearly always calculate a different disposable income than the debtor's actual income because it uses predetermined expenses based on the debtor's income and household size and not the debtor's actual expenses," and "also uses historical income rather than current income."). In its opinion of earlier this week, *Hamilton v. Lanning,* the Supreme Court recognized the near-complete difference between the retrospective, "mechanical" calculus of the means test and its result, and any determination of a debtor's surplus income that is based on real-life experience. 560 U.S. ——, ——–—— n. 2, ——–——, 130 S.Ct. 2464, 2469–70 n. 2, 2474–76, 177 L.Ed.2d 23 (2010).

**7.** By its structure, criteria, and impersonal mechanistic approach, the presumption of § 707(b)(2) focuses exclusively on a notion of

surplus income. The "totality of the circumstances" option under § 707(b)(3) is focused on "the debtor's financial situation," in a more general sense; and though that language does not denote the concept of surplus income per se, it is usually advanced by an analysis centered on ability to fund a hypothetical Chapter 13 plan, á la the prevailing construction of the "substantial abuse" provisions of pre-BAPCPA § 707(b). *In re Taylor,* 212 F.3d 395 (8th Cir.2000); *In re Koch,* 109 F.3d 1285 (8th Cir.1997); *In re Huckfeldt,* 39 F.3d 829 (8th Cir.1994); *U.S. Trustee v. Harris,* 960 F.2d 74 (8th Cir.1992); *Fonder v. United States,* 974 F.2d 996 (8th Cir.1992); *In re Walton,* 866 F.2d 981 (8th Cir.1989); *In re Cox,* 315 B.R. 850 (8th Cir. BAP 2004); *In re Nelson,* 223 B.R. 349 (8th Cir. BAP 1998). It is not yet settled in this circuit that post-BAPCPA § 707(b)(3) even allows for this sort of inquiry; the present discussion assumes that it does, for the sake of analysis.

But where (as here) a debtor initially sought relief under Chapter 13, it is proper to assume that he did so after recognizing that the means test would deem the availability of surplus income for debt service under a plan, and that a petition under Chapter 7 would be subject to dismissal.[8] In that event, the ostensible goal of both prongs of § 707(b) would have been met in the inception: the debtor shunted his initial resort to bankruptcy remedies over to the repayment mode, toward discharge of debt at the cost of long-term constraints and a commitment of monies. When that effort fails (again, as here), what is the sense of dredging up the convoluted, blunt-instrument assumptions of the means test, and plowing through its considerations on a financial experience and history that is now more deeply in the past?[9] In such a case, the debtor already deferred to the sensibility of that statutory regime but the effort just did not work.

■ In a case of this posture, the absurd result would be to resubject such a debtor to the grinding test of §§ 707(b)(2)-(3). Neither prong of the provision makes sense now. Imposing the straitjacket of the means test after the debtor had already deferred in good faith to its governance and essayed an attempt at compliance via structured debt repayment would be cumulative to the point of punitive, and without a reason.[10] Even more pointedly, running the debtor through the analysis of a hypothetical Chapter 13 case would be pointless. The very expedient was applied already, via a feasibility analysis for the confirmation process, and then it was tested de facto by performance post-confirmation. If the conversion of the case was prompted by a failure of that effort, and if the outcome was not cynically manipulated in advance, it would be ludicrous to eject such a debtor from Chapter 7 on the argument that they could now go forward under Chapter 13.

It is not inconsistent with the spirit of § 707(b) to free such a debtor from the prospect of dismissal. The statutory policy would have been honored already, and its goal of repayment reached to the extent that was possible under the indeterminacy and unpredictability of individual life-experience.[11] Under the facial language of § 707(b), the remedy of dismissal for an abuse of Chapter 7 is not available in a case that was originally "filed under"

---

8. The simple performance of the means test's calculus "concentrates his mind wonderfully" toward that possible end ... to use the phrasing of Dr. Samuel Johnson.

9. The means test of § 707(b)(2) uses the debtor's "current monthly income" as the beginning point of its calculation for a deemed ability to pay. 11 U.S.C. § 707(b)(2)(A)(i). A creation of BAPCPA, CMI is a retrospective measure, using the date of the bankruptcy filing as the point of beginning and going back from there, over a "6-month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition." *Hamilton v. Lanning*, 560 U.S. at ——–——, 130 S.Ct. at 2469–70. *See also In re Ellringer*, 370 B.R. at 910. It is calculated as "the average monthly income ... that the debtor receives ... derived during the six-month period ending on ... the last day of the calendar month immediately preceding the date of *the commencement of the case* ...." 11 U.S.C. § 101(10A) (emphasis added). The emphasized words are noteworthy in their use of the 1978–vintage terminology.

10. An exception might be recognized, where there was convincing proof that the debtor had harbored a strategic goal of evading scrutiny under § 707(b), from the inception of the case—i.e., had self-injected into Chapter 13 with the express intent to fail, though success was possible. There is no such proof here.

11. From a different direction, the majority opinion in *Hamilton v. Lanning* strongly counsels us that debtors' real lives and actual experiences are the key consideration when exacting payment of them in Chapter 13.

Chapter 13, and then converted to one under Chapter 7.

A handful of courts have reached the opposite conclusion, via rationales that go to varying lengths of complexity and entanglement to rationalize in a post-BAPCPA world, statutory language from prior law that was not changed though Congress had every opportunity to harmonize it toward the U.S. Trustee's argument. *In re Willis,* 408 B.R. 803 (Bankr.W.D.Mo.2009); *In re Perfetto,* 361 B.R. 27 (Bankr.D.R.I. 2007); *In re Kellett,* 379 B.R. 332 (Bankr. D.Or.2007); *In re Kerr,* 2007 WL 2119291 (Bankr.W.D.Wash.2007). Those courts are, simply, wrong.[12] Other courts, in comparably-small aggregate, have gotten to the outcome reached here. *In re Dudley,* 405 B.R. 790 (Bankr.W.D.Va.2009); *In re Guarin,* 2009 WL 4500476 (Bankr. D.Mass.2009); *In re Miller,* 381 B.R. 736 (Bankr.W.D.Ark.2008); *In re Ryder,* 2008 WL 3845246 (Bankr.N.D.Cal.2008); *In re Fox,* 370 B.R. 639 (Bankr.D.N.J.2007). Their analyses vary in their complexity, as well; but the most cogent is *In re Dudley.* The *Dudley* court went through an extended analysis starting with the "plain [i.e., facial] meaning" of the relevant language from § 707(b)(1), 405 B.R. at 793–795; then holding that "literal application" of the participle-modifier "filed under" did not lead to an absurd result, 405 B.R. at 795–798; and concluding that the same "literal application" was not at odds with Congressional intent or BAPCPA's purpose, 405 B.R. at 798–801. Its analysis of the extant, published decisions, the text of the statute, and the sparse indications of

legislative purpose is intense and cogent enough that it need not be reprised here.

Thus, the United States Trustee's motion must be terminated now, for want of a statutory basis to go forward under the current posture of this case.

IT IS THEREFORE ORDERED that the motion of the United States Trustee for dismissal of this case pursuant to 11 U.S.C. § 707(b)(1) is denied.

---

12. To deal with the conundrum of subjecting a debtor to a post-conversion motion under § 707(b), "many months (or years) after the petition date" but with the means test driven by old and older experience, the *Perfetto* court elected to "consider the treatment of those cases on an ad hoc basis." 361 B.R. at 31.

That would lead straight away from the standardized sort of outcome, with severely reduced latitude in judicial discretion, that the means test in specific compels, and BAPCPA more generally contemplated. *See In re Frederickson,* 545 F.3d 652, 658 (8th Cir.2008).