# STATE OF MICHIGAN

# COURT OF APPEALS

HONIGMAN MILLER SCHWARTZ AND
COHN LLP,

      Petitioner-Appellant,

v

CITY OF DETROIT,

      Respondent-Appellee.

FOR PUBLICATION
January 18, 2018
9:05 a.m.

No. 336175
Tax Tribunal
LC No. 16-000202

Before: MURPHY, P.J., and SAWYER and BECKERING, JJ.

SAWYER, J.

We are asked in this case to determine whether services performed by an attorney in Detroit on behalf of a client located outside the city while that attorney is physically located in his or her office in the city is to be considered in-city or out-of-city income for purpose of § 23 of the City Income Tax Act (CITA).[1] Petitioner maintains that the relevant consideration is where the client receives the services, while respondent and the Tax Tribunal maintain that the relevant consideration is where the work is performed. We agree with petitioner and reverse the Tax Tribunal and remand.

Petitioner is a law firm with a primary office in the city of Detroit, but with additional offices located elsewhere. Petitioner represents clients both within Detroit and outside Detroit. Under § 18 of CITA[2], petitioner must determine what percentage of its business income is attributable to Detroit. Petitioner utilizes §§ 20 through 24[3] in making this determination. This method requires the taxpayer to calculate the percentage attributable under three different methods and then average the three.[4] The three factors are: (1) the property factor under § 21, considers what percentage of the business' tangible personal and real property is located within

---

[1] MCL 141.623.

[2] MCL 141.618.

[3] MCL 141.620 through MCL 141.624.

[4] MCL 141.624.

-1-

the city,[5] (2) the payroll factor under § 22, considers what percentage of the payroll is attributable to "work done or services performed within the city,"[6] and (3) the sales factor under § 23, considers the gross revenue "derived from sales made and services rendered in the city"[7] compared to all gross revenue.

This case involves tax years 2010-2014 (the "subject years"). The parties agreed upon the computation of the first two factors (the property factor and the payroll factor), but disagree as to the computation of the sales factor. As noted above, the dispute involves whether to consider "services rendered" as being where the client receives the services (petitioner's interpretation) or where the work is performed (respondent's interpretation). Specifically, petitioner states that it calculated its "in-city" gross revenue by summing the gross revenue collected from clients located within the city of Detroit. According to petitioner, it had been utilizing this methodology in the past, but it is not until the subject years that the city objected and calculated the sales factor based on the billable hours recorded for work performed within the city, regardless of the location of the client. The difference is not insignificant.[8] For the subject years, under the city's methodology, slightly over 51% of petitioner's gross revenue would be considered in-city, while under petitioner's methodology, it would be slightly less than 11%.[9]

In the Tax Tribunal, the parties filed cross-motions for summary disposition. The hearing officer determined that § 23 was ambiguous and unclear. The hearing officer concluded that because services are intangible, they cannot be delivered in the same manner as tangible property and that there was no reason to overrule the city's construction of the statute. Initially, we note that both parties agree that the tribunal erred in determining that § 23 is ambiguous.[10] Of course, they offer differing interpretations of the statute. But, as an initial matter, we agree that the statute is unambiguous. Accordingly, we must interpret the plainly expressed meaning of the statute as contained in the words utilized by the Legislature.[11] And we conclude that that plainly expressed meaning does not support respondent's position nor the conclusion of the tribunal.

We begin by observing that the Legislature used two different terms in drafting the payroll factor under § 22 and the sales factor under § 23. The payroll factor refers to "services

---

[5] MCL 141.621.

[6] MCL 141.622.

[7] MCL 141.623.

[8] For the subject years, the back taxes, plus interest and penalty, exceeds $1 million.

[9] Of course, this only accounts for one-third of the final attribution.

[10] This would seem to be a necessity for respondent as otherwise it would have to deal with a principle of law that the tribunal overlooked. Namely, that "ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer." *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994).

[11] *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013).

performed" and § 23 refers to "services rendered." We agree with petitioner that these must be given two different meanings because when "the Legislature uses different words, the words are generally intended to connote different meanings. Simply put, 'the use of different terms within similar statutes generally implies that different meanings were intended.' 2A Singer & Singer, Sutherland Statutory Construction, (7th ed), § 46:6, p 252. If the Legislature had intended the same meaning in both statutory provisions, it would have used the same word."[12] Thus, because § 22 looks to where the work is done or performed, then the Legislature likely intended that the term "services rendered" in § 23 to have a different meaning.

The tribunal deals with this issue by also noting the directive of the Supreme Court in *GC Timmis & Co v Guardian Alarm Co*[13] that statutory

> language does not stand alone, and thus it cannot be read in a vacuum. Instead, "[i]t exists and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . ." *Arrowhead Dev Co v Livingston Co Rd Comm,* 413 Mich 505, 516; 322 NW2d 702 (1982). "[W]ords in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole." *Gen Motors Corp v Erves (On Reh),* 399 Mich 241, 255; 249 NW2d 41 (1976) (opinion by COLEMAN, J.). Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. *McCarthy v Bronson,* 500 US 136, 139; 111 S Ct 1737; 114 L Ed 2d 194 (1991); *Hagen v Dep't of Ed,* 431 Mich 118, 130–131; 427 NW2d 879 (1988). "In seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *People v Vasquez,* 465 Mich 83, 89; 631 NW2d 711 (2001), quoting *Sanchick v State Bd of Optometry,* 342 Mich 555, 559; 70 NW2d 757 (1955). "It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v Impac Ltd, Inc,* 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977); see also *Beecham v United States,* 511 US 368, 371; 114 S Ct 1669; 128 L Ed 2d 383 (1994).

In our view, however, this strengthens, rather than weakens, petitioner's interpretation. While the Legislature does not give much direct guidance in § 23 to the meaning of "services rendered" it does give explicit guidance to "sales made in the city." MCL 141.23(1) provides as follows:

> For the purposes of this section, "sales made in the city" means all sales where the goods, merchandise or property is received in the city by the purchaser, or a person or firm designated by him. In the case of delivery of goods in the city to a common or private carrier or by other means of transportation, the place at

---

[12] *United States Fidelity & Guaranty Co v Michigan Catastrophic Claims Ass'n*, 484 Mich 1, 14; 795 NW2d 101 (2009).

[13] 468 Mich 416, 421-422; 662 NW2d 710 (2003).

which the delivery has been completed is considered as the place at which the goods are received by the purchaser.

The following examples are not all inclusive but may serve as a guide for determining sales made in the city:

(a) Sales to a customer in the city with shipments to a destination within the city from a location in the city or an out-of-city location are considered sales made in the city.

(b) Sales to a customer in the city with shipments to a destination within the city directly from the taxpayer's in-city supplier or out-of-city supplier are considered sales made in the city.

(c) Sales to a customer in the city with shipments directly to the customer at his regularly maintained and established out-of-city location are considered out-of-city sales.

(d) Sales to an out-of-city customer with shipments or deliveries to the customer's location within the city are considered sales made in the city.

(e) Sales to an out-of-city customer with shipments to an out-of-city destination are considered out-of-city sales.

There is a very obvious common thread here: what is relevant is not the location of the taxpayer (or even the customer), but the destination of the goods. If the destination is within the city, then it is a sale made in the city. If the destination is outside the city, then it is not a sale within the city. This utilizes a "destination test" for the sales factor.[14]

Returning to the meaning of the word "render," petitioner supplies a contemporary definition of the word from the 1969 edition of Webster's Third New International Dictionary,[15] wherein the relevant definition of "render" is "to transmit to another: DELIVER." This is in contrast to the tribunal's opinion which looks to another definition of "render" as "to do (a service) for another". It then equates "do" with "perform" to reach the conclusion that "render" is "synonymous with perform." We find this conclusion to be dubious and unnecessarily convoluted.[16] Why would the Legislature utilize "render" to mean "perform" by way of the verb

---

[14] See Hellerstein and Hellerstein, *State and Local Taxation*, Thomson West (8th ed), p 658 (2005).

[15] Section 23 was part of 1964 PA 284.

[16] Respondent pursues the same reasoning by citing a number of sources to suggest an equivalency between "render" and "perform". But only two examples come close to equating the two: Thesaurus.com gives "performed" as a synonym of "rendered" and Black's Law Dictionary gives a definition of "render" to mean "perform . . . services", though respondent

"to do", when it would have been much simpler and clearer to simply reuse the word "perform"? This neatly illustrates the principle that the Legislature utilizes different words when it intends different meanings.

The tribunal's opinion finds a need for its strained conclusion because, it observes, that services "cannot be 'delivered' in the same manner as tangible items." It then invokes an irrelevant quotation typically attributed to Abraham Lincoln that "A lawyer's time and advice is his stock in trade." It is true that services are different than tangible items. But that does not mean that services cannot be delivered. And, with all due respect to President Lincoln, a lawyer's time and advice can result in a tangible item. For example, a lawyer's time and advice may well result in the drafting of a will, a complaint, a contract, a brief, etc. And those items may well be delivered to the client in a different location than where the lawyer performs the drafting. Moreover, even the advice itself may be delivered to a different location. For example, a lawyer in Detroit may have a telephone conversation with a client located in Ann Arbor. The lawyer's advice during that conversation is delivered to the client in Ann Arbor.

In sum, we conclude that, after considering the Legislature's use of the word "rendered," rather than reusing "performed," in § 23 and in considering that term in the context of how it treated the sale of tangible goods, we conclude that the relevant consideration in § 23 is where the service is delivered to the client, not where the attorney performs the service. Thus, for purposes of § 23, where a service is provided to a client outside the city of Detroit it is to be considered an "out-of-city" service while services provided to a client in the city of Detroit is to be considered an "in-city" service.

The Tax Tribunal's grant of summary disposition in favor of respondent is reversed and the matter is remanded to the Tax Tribunal for further proceedings consistent with this opinion. We do not retain jurisdiction. Petitioner may tax costs.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Jane M. Beckering

---

leaves out a semi-colon and intervening words to reach that definition in Black's. The other examples involve some variation of doing or providing a service.