RILEY, Chief Judge,
with whom
BRIGHT, Circuit Judge, joins, concurring.
Although the circumstances for the victim are tragic and evoke sympathy, I must follow the law. Thus, I concur completely in the court’s opinion. I write separately to emphasize my view that the statute is not ambiguous, and, to the extent it is relevant, the legislative history decisively demonstrates the government was required to prove Bruguier knew the victim was “(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, th[e] sexual act.” 18 U.S.C. § 2242(2).
A. Statutory Language
This case hinges on routine statutory construction.[6] “As in all such cases, we begin by analyzing the statutory language.” Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251, 130 S.Ct. 2149, 2156, 176 L.Ed.2d 998 (2010). “If the statute is clear and unambiguous ‘that is the end of the matter, for the court ... must give effect to the unambiguously expressed intent of Congress.’ ” Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Because “statutory language must always be read in its proper context,” McCarthy v. Bronson, *765 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), whether a statute is unambiguous depends not only on “the particular statutory language at issue,” but also on “the language and design of the statute as a whole,” K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); see also Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). A contextual reading of the “statute as a whole” demonstrates the knowledge requirement in § 2242(2) unambiguously applies to the circumstance of the victim’s incapacity.
1. The Act
Congress passed § 2242(2) as part of the Sexual Abuse Act of 1986(Act), Pub.L. No. 99-646, § 87, 100 Stat. 3592, 3620 (1986) (codified as amended at 18 U.S.C. §§ 2241-44, 2246). The Act added three parallel sections to Title 18: § 2241 (aggravated sexual abuse), § 2242 (sexual abuse), and § 2243 (sexual abuse of a minor or ward). See § 87, 100 Stat. at 3620-22. The court’s majority opinion demonstrates that these three sections share the same linguistic design.
Given the three sections’ shared language and structure, the term “knowingly” — absent limiting language — must have the same basic reach in § 2242(2) as it' does in the two sections that bookend it. See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. —, -, 133 S.Ct. 2517, 2529, 186 L.Ed.2d 503 (2013) (“Just as Congress’ choice of words is presumed to be deliberate, so too are its' structural choices.”); Comm’r v. Lundy, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (“The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.” (internal quotation omitted)); [7] cf. Clark v. Martinez, 543 U.S. 371, 386, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (refusing to “establish within our jurisprudence ... the dangerous principle that judges can give the same statutory text different meanings in different cases”).
Statutory context also compels the conclusion that the term “knowingly,” absent specific limiting language, applies not only to the conduct element of each of the three crimes (i.e., “engaging] in a sexual act with another person”), but to the circumstances subsequently listed in each section: the other person’s age in § 2241(c), incapacity in § 2242(2), and age plus age difference in § 2243(a). Congress expressed this point unequivocally by adding specific limiting language to § 2241 and § 2243, but not to § 2242. See, e.g., Lindh v. Murphy, 521 U.S. 320, 330, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (“[Njegative implications raised by disparate provisions are strongest when the portions of a statute treated differently ... were being considered simultaneously when the language raising the implication was inserted.”).
To § 2241, Congress added an affirmative statement that engaging in a sexual act with a child under the age of 12 is a strict liability crime:
(d) State.of Mind Proof Requirement.—
In a prosecution under, subsection (c) of this section, the Government need not prove that the defendant knew that the *766 other person engaging in the sexual act had not attained the age of 12 years.
§ 87, 100 Stat. at 3621 (codified at 18 U.S.C. § 2241(d)) (emphasis added).
In § '2243, Congress affirmatively relieved the government of the burden of proving the defendant’s knowledge of the other person’s age and age difference while creating an affirmative defense available to a defendant who reasonably believed the other person was old enough:
(c) Defenses. — (1) In a prosecution under subsection (a) of this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the other person had attained the age of 16 years.
(d) State of Mind Proof Requirement.— In a prosecution under subsection (a) Of this section, the Government need not prove that the defendant knew—
(1) the age of the other person engaging in the sexual act; or
(2) that the requisite age difference existed between the persons so engaging.
§ 87, 100 Stat. at 3621-22 (codified at 18 U.S.C. § 2243(e)-(d)) (emphasis added).
Yet Congress added no affirmative language to relieve the government of its burden to prove the defendant’s knowledge in § 2242(2). Given “[t]he interrelationship and close proximity of these provisions of the statute,” Lundy, 516 U.S. at 250, 116 S.Ct. 647, the absence of any language limiting the reach of the term “knowingly” in § 2242(2) makes the text unmistakably clear: § 2242(2) is- not a strict liability crime. See, e.g., Field v. Mans, 516 U.S. 59, 75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (“The more apparently deliberate the contrast, the stronger the inference, as applied, for example, to contrasting statutory sections originally enacted simultaneously in relevant respects.”). “Nothing, indeed, but a different intent explains the different treatment” of § 2242(2) and §§ 2241 and 2243. Lindh, 521 U.S. at 329, 117 S.Ct. 2059.
2. Congressional Intent
The “immediately surrounding” sections show that if Congress intended to make § 2242(2) a strict liability crime, Congress knew exactly how to do so. Holder v. Humanitarian Law Project, 561 U.S. 1, -, 130 S.Ct. 2705, 2717, 177 L.Ed.2d 355 (2010); see, e.g., Medellín v. Texas, 552 U.S. 491, 522, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008) (“Such language demonstrates that Congress knows how to [achieve a particular result] when it desires such a result.”); Jama v. ICE, 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 57, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (“Congress has demonstrated in yet other statutory provisions that it knows how to avoid [a result] by using language that explicitly [requires a different result].”).
Elsewhere in the same statute at issue here, Congress affirmatively created a strict liability crime— § 2241(c) — and a quasi-strict liability crime— § 2243(a). Sections 2241(d) and 2243(d) lead to the inescapable conclusion that “Congress kn[ew] how to say [‘strict liability’] when it mean[t] to,” City of Milwaukee v. Illinois & Michigan, 451 U.S. 304, 329 n. 22, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), and Congress did not mean to say so in § 2242(2).
It is inconceivable that Congress meant to create a strict liability crime by omission in one section of a statute when Congress affirmatively created strict liability crimes by inclusion in the immediately preceding and immediately following sec *767 tions of the same statute. “If Congress had desired to make” § 2242(2) a strict liability crime, “it could have used language similar to that which it invoked in” § 2241(d). Nassar, 570 U.S. at -, 133 S.Ct. at 2529. “Or, it could have inserted” provisions similar to § 2243(c) and (d) to make § 2242(2) a quasi-strict liability crime. Id. “But in writing” § 2242(2), “Congress did neither of those things, and ‘[w]e must give effect to Congress’ choice.’ ” Id. (alteration in original) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 n. 3, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).
3.Statutory Background
Looming large over Congress’ drafting of the Act was the Supreme Court’s “landmark opinion in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952),” in which “the Court used the background presumption of evil intent to conclude that the term ‘knowingly’ ” applied well beyond its “isolated position” in the statute at issue. United States v. X-Citement Video, Inc., 513 U.S. 64, 70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). Just eighteen months before Congress passed the Act, the Supreme Court in Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), reminded Congress of Morissette’s “background presumption.” There, the Supreme Court considered whether the term “knowingly” applied to the phrase “in any manner not authorized by [the statute]” in a federal food stamp statute making it a crime to “knowingly use[ ], transfer[ ], acquire[ ], alter[], or possess[] coupons or authorization cards in any manner not authorized by [the statute] or the regulations.” Id. at 420-21, 105 S.Ct. 2084 (emphasis added) (last alteration in original) (quotation omitted). “The Court held that it did, despite the legal cliche ‘ignorance of the law is no excuse.’ ” Flores-Figueroa v. United States, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (citing Liparota, 471 U.S. at 433, 105 S.Ct. 2084).
Legislating amid this backdrop, Congress obviously knew that to make § 2242(2) a strict liability statute would require affirmative language — exactly the sort of affirmative language Congress used in §§ 2241(d) and 2243(d), but did not add to § 2242. See United States v. U.S. Gypsum Co., 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (“Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.”). In accordance with “the interpretive assumption that Congress knows how [the courts] construe statutes and expects [the courts] to run true to form,” Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), we must reject the government’s request to construe § 2242(2) in a way Congress could not reasonably expect and evidently did not intend.
4.Grammar
The dissent sidesteps these “conventional doctrines of statutory interpretation,” Lamie v. U.S. Tr., 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), and builds its case on what it terms “the natural grammatical reading of § 2242(2),” post at 777. The dissent’s “natural” reading is not so natural. First, the dissent’s eise-gesis of X-Citement Video ignores how the Supreme Court itself has interpreted that case. In Flores-Figueroa, for example, the Supreme Court (1) referred to “[t]he language in issue in X-Citement Video ” as relatively “ambiguous”; (2) cited Justice Stevens’ X-Citement Video concurrence, which said “the normal, commonsense reading” is to apply a criminal statute’s knowledge requirement to every element *768 following the word “knowingly,” 513 U.S. at 79, 115 S.Ct. 464; and (3) considered X-Citement Video’s holding (as opposed to the few lines of contrary dicta on which the dissent relies) to be “fully consistent with ... ordinary English usage.” Flores-Figueroa, 556 U.S. at 652-53, 129 S.Ct. 1886.
Second, the dissent’s reliance on “inter-ruptive punctuation,” post at 776, is misplaced. As the Supreme Court and our court have said “[o]ver and over,” U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), “[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.” United States v. Heirs of Boisdoré, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850) (quoted most recently in Maracich v. Spears, 570 U.S. -, -, 133 S.Ct. 2191, 2203, 186 L.Ed.2d 275 (2013) and United States v. Jungers, 702 F.3d 1066, 1069-70 (8th Cir.2013)). “No more than isolated words or sentences is punctuation alone a reliable guide for discovery of a statute’s meaning.” U.S. Nat’l Bank of Or., 508 U.S. at 455, 113 S.Ct. 2173.
Considering a statute in which “knowingly” was separated by the same “inter-ruptive punctuation” — the dash — at issue here and in X-Citement Video, the Supreme Court observed “[tjhis is not a case where grammar or structure enables the challenged provision or some of its parts to be read apart from the ‘knowingly’ requirement. Here, ‘knowingly’ introduces the challenged provision itself, making clear that it applies to that provision in its entirety.”[8] United States v. Williams, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (emphasis added) (analyzing 18 U.S.C. § 2252A(a)(3)).
Even if the dissent’s grammatical analysis were correct, that would not outweigh the unambiguous contextual meaning of § 2242(2). See McCarthy, 500 U.S. at 139, 111 S.Ct. 1737. Grammar provides clues, sometimes decisive, to what language means, but ungrammatical statements can be unambiguous and grammatical statements ambiguous — depending on context. See, e.g., Verizon Commc’ns, Inc. v. FCC, 535 U.S. 467, 533, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002) (“[Wjhether [language] is plain ... is a question of context as much as grammar.”). Section 2242(2) might be “awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue,” Lamie, 540 U.S. at 534, 124 S.Ct. 1023. We are not now, nor have we ever been, “a panel of grammarians.” Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); see also, e.g., Ex parte Bollman, 8 U.S. (4 Cranch) 75, 95, 2 L.Ed. 554 (1807) (Marshall, C.J.) (“[SJtrict grammatical construction .... is not entirely without its influence; but the sound construction which the court thinks it safer to adopt, is, that the true sense of the words is to be determined by the nature of the provision, and by the context.”). Reversing the Third Circuit’s decision in United States v. Palma-Ruedas, 121 F.3d 841 (3d Cir.1997), the Supreme Court explained formal grammatical analysis “cannot be applied rigidly, to the exclusion of other relevant statutory language.” United States v. *769 Rodriguez-Moreno, 526 U.S. 275, 280, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). As then-Circuit Judge Alito.warned the Third Circuit in the Palma-Ruedas case, “Mather than relying on grammatical arcana, [courts] should ... look at the substance of the statutes in question.” Palma-Ruedas, 121 F.3d at 865 (Alito, J., dissenting).
Heeding this prescient warning by applying “settled principles of statutory construction,” Carcieri v. Salazar, 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009), our court properly rejects the dissent’s ad hoc grammatical analysis. See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (“The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.”). Because substance, context, and structure establish that § 2242(2) “is plain and unambiguous[,].... we must apply the statute according to its terms.” Carcieri, 555 U.S. at 387, 129 S.Ct. 1058.
B. Legislative History
Casting aside textual context and structure, the dissent invokes legislative history and relies on extra-statutory ephemera to reach a reading inconsistent with the text of the Act. See post at 779-81 (quoting H.R. 4876, 98th Cong. § 2 (1984); Sexual Abuse Act of 1986: Hearing Before the Subcomm. on Criminal Justice of the H. Comm, on the Judiciary (1986 Hearing), 99th Cong. 15, 41(1986); H.R.Rep. No. 99-594 (1986)). The dissent asserts these sources “show[] that the ‘knowingly’ requirement in § 2242(2) was not intended to apply to the defendant’s awareness of the victim’s incapacity.” Id. at 779. Even if that were true, “the authoritative statement is the statutory text, not the legislative history.” Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).[9]
It is especially objectionable to rely on legislative imponderables to “mak[e] criminal what the text would'otherwise permit.” Flores-Figueroa, 556 U.S. at 658, 129 S.Ct. 1886 (Scalia, J., concurring). A moment’s reflection reveals the fundamental unfairness of imprisoning anyone based on stray utterances dug from the recesses of the Congressional Record. After all, “[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.” United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). “This venerable rule,” id., “ensures fair warning.” United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (emphasis added). If the government must resort to “the statement of a single Member of Congress or an unvoted-upon (and for all we know unread) Committee Report” to convince a court that a statute criminalizes certain conduct, Flores-Figueroa, 556 U.S. at 658, 129 S.Ct. 1886 (Scalia, J., concurring), the statute cannot give anyone — except perhaps the lone Member of Congress or the committee. staffers who wrote the report— “fair warning,” Lanier, 520 U.S. at 266, 117 S.Ct. 1219.
Regardless, a brief foray into the history of § 2242(2), not to mention a more careful reading of the dissent’s sources, shows the dissent’s reliance on legislative history is misplaced. Indeed, this is the rare case where legislative history, which is “usually] inconclusive,” Flores-Figueroa, 556 U.S. at 658, 129 S.Ct. 1886 (Scalia, J., *770 concurring), provides a clear answer: Congress intended to require proof of a defendant’s knowledge of the victim’s incapacity.
1. Drafting History
One of the principal sponsors of the Act testified in early House committee hearings that § 2242(2) was intended to make it a crime to “engag[e] in a sexual act with persons known by the offender to be incapable of appraising the nature of such conduct: those who are physically incapable of declining participation in or communicating unwillingness to engage in the sexual act.” Federal Rape Law Reform: Hearings Before the Subcomm. on Criminal Justice of the H. Comm, on the Judiciary (Hearings), 98th Cong. 80 (1986) (statement of Rep. Steny Hoyer (Hoyer statement)) (emphasis added). Explaining the legislative intent behind 18 U.S.C. § 2244(a) (making it a crime to “knowingly engage[ ] in or cause[ ] sexual contact with or by another person, if to do so would violate — ... (2) section 2242 ... had the sexual contact been a sexual act”), Representative Hoyer testified that § 2244(a) would protect “those who are known by the offender to be unable to appraise the nature of [the sexual] conduct whether by reason of mental disease or defect or of intoxication.” Hearings, supra, at 80 (Hoyer statement) (emphasis added).
An early draft of the Act would even have inserted the phrase “known by the offender to be” into the statutory text itself. See H.R. 4876, 99th Cong. § 2. But Congress realized that phrase was redundant because § 2242(2) introduces all the elements and circumstances of the offense with the term “knowingly.”[10] Congress drafted the Act “employing the format, conventions, and techniques used in drafting the Criminal Code Revision Act of 1980 [ (CCRA) ] reported by th[e] [House Judiciary] Committee in the 96th Congress.” H.R.Rep. No. 99-594, at 13 & n. 51. Explaining the Act’s drafting process, the House referenced the CCRA committee report: “[I]n the absence of language to the contrary, a knowing state of mind will be required for conduct, results, and circumstances.” H.R.Rep. No. 96-1896, at 35 (1980) (emphasis added); see H.R.Rep. No. 99-594, at 15 n. 59 (citing H.R.Rep. No. 96-1396, at 35).
Consistent with its understanding “that the state of mind required for conduct w[ould] apply to circumstances and results unless otherwise specified,” H.R.Rep. No. 96-1396, at 34 (emphasis added), Congress specified otherwise in §§ 2241(d) and 2243(d). Congress was not alone in its belief that a specific exception was required to limit the knowledge requirement. See H.R.Rep. No. 99-594, at 15 n. 59, 18 n. 69; cf. U.S. Gypsum, 438 U.S. at 438, 98 S.Ct. 2864 (requiring “far more than ... simple omission ... to justify dispensing with an intent requirement”). The Department of Justice (Department) thought *771 the same thing. See 1986 Hearing, supra, at 37, 38-39, 44 (statement of Mark M. Richard, Deputy Assistant Att’y Gen. (Richard statement)). Yet Congress did not specify otherwise in § 2242(2). The resulting conclusion is unavoidable: § 2242(2) requires proof of knowledge because “the state of mind required for the conduct — knowing—is also required for the circumstance of the victim’s” incapacity. H.R.Rep. No. 99-594, at 15 n. 59; see H.R.Rep. No. 96-1396, at 35.
2. Government’s Views
This conclusion draws further support from the government’s position at the time Congress passed the Act.[11] In initial committee hearings, an official “presenting] the views of the Department” testified that § 2242(2) would make it a crime to “engage[] in a sexual act with a person known by the offender to be incapable of appraising the nature of the conduct or physically incapable of declining participation in it.” Hearings, supra, at 95 (statement of Victoria Toensing, Deputy Assistant Att’y Gen.) (emphasis added). Although this official testified the Department recommended numerous amendments to the proposed legislation — including a reasonable belief defense in § 2243— neither she nor any other Department official ever expressed concern over the knowledge requirement in § 2242(2). See id. at 97; see also 1986 Hearing, supra, at 37-44 (Richard statement).
To the contrary, testifying about the exact language used in the statute — after Congress, realizing the phrase was redundant, deleted “known by the offender to be” from a prior draft — another official “presenting] the views of the Department” explained that § 2242(2) criminalized “knowingly engaging in a sexual act with a person who is incapable of appraising the nature of the conduct or physically incapable of declining participation in it.” 1986 Hearing, supra, at 41 (Richard statement) (emphasis added). Even by the dissent’s “natural grammatical reading,” this official statement recognizes the knowledge requirement applies to the circumstance of the victim’s incapacity “since no independent clauses or interruptive punctuation marks indicate otherwise.”[12] Post at 780. In contrast, the Department official described § 2241(c) and § 2243(a) without a similar knowledge requirement, recognizing that these crimes would not require the government to prove knowledge. See 1986 Hearing, supra, at 41 (Richard statement) (describing §§ 2241(c) and 2243(a) as making it a crime to “en-gag[e] in a sexual act with a person under twelve years of age” and to “engage[e] in a sexual act with a minor who is at least twelve but under sixteen years of age if the offender is at least four years older than the minor”). When Congress passed the Act, the government correctly understood that the knowledge requirement continued past the “interruptive punctuation” on which the government and dissent today construct their case.
3. Legislative Policies
Congressional intent likewise reinforces our court’s reading of § 2242(2). The gen *772 esis of the Act was Congress’ recognition that federal law was becoming increasingly inconsistent with state law. See Hearings, supra, at 3-4 (statement of Rep. Robert Carr (Carr statement)). While federal law still relied on an obsolete definition of rape, by 1984 thirty-eight states had “reformulate[ed] [rape] into a crime of sexual assault.” Id. at 4. Michigan was the first state to do so, and Congress, finding Michigan’s reform effort particularly instructive, went so far as to hold a hearing in that state. See id. at 1, 4. Members of Congress worried that antiquated federal laws and modernized state laws criminalized different conduct, an imbalance of particular concern in Indian country. See, e.g., id. at 5; id. at 68 (Hoyer statement); id. at 71 (statement of Rep. Bobbi Fied-ler).
Although the Act’s drafters considered the legal reforms of thirty-eight states, Congress looked to three states in particular: California, Maryland, and Michigan. See, e.g., 1986 Hearing, supra, at 6 (statement of Rep. Steny Hoyer); id. at 35 (statement of Rep. Bobbi Fiedler); Hearing, supra, at 3^ (Carr statement) (describing Rep. Hoyer’s effort to “take the Maryland experience into Federal law” and his effort to “do[] the same thing” with Michigan’s reforms). None of these states imposed strict liability in their state analogue to § 2242(2) at the time, nor do they today.[13]
These states hardly were unique. Contrary to the dissent’s selective quotation of Morissette, our law has not “long recognized an exception from traditional mens rea requirements for ‘sex offenses, such as rape,’ in which the victim’s status ... is determinative.” Post at 777 (emphasis added) (quoting 342 U.S. at 251 n. 8, 72 S.Ct. 240). Morissette actually explains that “sex offenses, such as rape, in which the victim’s actual age ” — not status — “was determinative” are one of the “few exceptions” to the mens rea requirement which “took deep and early root in American soil” and “was so inherent in the idea of the offense that it required no statutory affirmation.”[14] 342 U.S. at 251-52 & n. 8, 72 S.Ct. 240 (emphasis added). In contrast to the narrow, statutory scienter exception for the historical crime of “statutory rape,”[15] there is no Anglo-American tradition of imposing strict liability for sexual activity with an intoxicated or even unconscious individual. See, e.g., R v. Camplin, (1845) 169 Eng. Rep. 163 (C.C.) 164, 1 Den. 89, 91 (“[T]he crime of rape is *773 committed by violating a woman when she is in a state of insensibility ... the accused knowing at that time that she is in that state.” (emphasis added)); Model Penal Code § 213.1 & cmt. 5 (Official Draft and Revised Comments 1980) (requiring proof the perpetrator was “at least reckless with respect to the [victim’s] unconsciousness”). Before Congress passed the Act,' federal law did not even criminalize knowing sexual assault of an intoxicated victim, much less impose strict liability. See 18 U.S.C. § 2031 (repealed 1986); Williams v. United States, 327 U.S. 711, 715, 66 S.Ct. 778, 90 L.Ed. 962 (1946) (requiring “force by the offender and ... an absence of consent by the victim”).
Ignoring this context, the dissent emphasizes only that Congress wished to “ ‘modernize and reform Federal rape statutes,’ ” post at 781 (quoting H.R.Rep. No. 99-594, at 6). The dissent assumes strict liability is the most “modern” way to tackle society’s alarming rates of sexual assault. See post at 781-82. But Congress did not think so in 1986 when it enacted § 2242(2) and decided, in § 2243(c), to dilute the old federal rape law’s strict liability.[16] Neither did Congress think so in 2011 when it amended the Uniform Code of Military Justice to require actual or constructive knowledge. See National Defense Authorization Act for Fiscal Year 2012, Pub.U No. 112-81, § 541(a)(3), 125 Stat. 1298,1404-05 (Dec. 31, 2011) (amending redesignated 10 U.S.C. § 920(b) to prohibit sexual acts “when the [perpetrator] knows or reasonably should know that the other person is [incapacitated]” (emphasis added)). Nor do the District of Columbia and the majority of states think so, including at least six of the seven states in our circuit, all of which have chosen not to make sexual activity with an intoxicated person a strict liability crime.[17]
*774 Legislative history, to the extent it is relevant, confirms the court’s unambiguous reading of § 2242(2).
C. Conclusion
The unambiguous text of the statute, confirmed by the legislative history, required the government to prove Bruguier knew the victim was incapacitated. To avoid the unpleasant consequences of the district court’s failure to inform the jury of this requirement, the government “ask[s] us not to interpret” § 2242(2), “but to revise it.” Holder, 561 U.S. at -, 130 S.Ct. at 2718. This our court cannot do. See, e.g., Lamie, 540 U.S. at 538, 124 S.Ct. 1023 (“Our unwillingness to soften the import of Congress’ chosen words even if we believe the words lead to a harsh outcome is longstanding.”). “The remedy [the government seeks] lies with Congress and not with this Court. Congress may amend the statute; we may not.” Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 576, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).
Our court has no choice under the law but to reverse Bruguier’s § 2242(2) conviction.

. As Judge Richard S. Arnold said in his elegantly straightforward way, we judges are not empowered to "make law because we think a certain rule of law is a good thing.” Richard S. Arnold, Address at the Eighth Circuit Judicial Conference: The Art of Judging (Aug. 8, 2002), available at http://www. youtube.com/watch?v=Z_X04FadiiE. Judges must not "usurp policy judgments that Congress has reserved for itself,” Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 508, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

. This intratextual method of construction dates back to two of the Supreme Court's earliest and most celebrated cases. See Akhil Reed Amar, Intratextualism, 112 Harv. L.Rev. 747, 755-63 (1999) (analyzing the use of in-tratextualism by Chief Justice Marshall in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) and Justice Story in Martin v. Hunter’s Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816)).

. The dissent has no authoritative answer to Williams, which makes clear that interruptive dashes do not provide a grammatical or structural basis for reading a subsequent provision apart from the word “knowingly” introducing the entire provision. Instead, the dissent in this case quotes the dissent in X-Citement Video for a grammatical proposition the Supreme Court dismissed in X-Citement Video and rejected in Flores-Figueroa. See post at 776-77.

. As Justice Oliver Wendell Holmes taught, judges “do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv. L.Rev. 417, 419 (1899).

. As with the dissent’s context-free reading of § 2242(2), the dissent takes a limited look at the legislative history and sees a "stark change" in the various testimonies and statements given by Representative Hoyer in the run-up to the Act's passage by Congress. Post at 779-81. Representative Hoyer’s testimony in 1984 (actually published and used by Congress in 1986), focused on the intent underlying the Act. See Hearings, supra, at 67-82. His later statement, quoted by the dissent, did not address § 2242(2)'s mens rea requirement at all. See 1986 Hearing, supra, at 15. Representative Hoyer discussed all substantive changes to the Act in exhaustive detail. See id. at 3-21. Nowhere did he say § 2242(2) would impose strict liability- — in marked contrast to his discussion of § 2243. See id. at 16. In context, it is obvious Representative Hoyer considered the deletion of "known by the offender" to be nothing more than a non-substantive change to conform to the Act’s drafting format.

. Yet the government now asserts ''[t]he legislative history regarding the statute does not provide a clear answer to the mens rea question presented here.” If not duplicitous, that assertion is at least an example of why it is improper to criminalize conduct based on needles hidden in legislative history haystacks: those historical needles are hard for the government, let alone a criminal defendant, to find.

. As the Department submitted this statement in writing, one can hardly argue the absence of punctuation was a mere oversight or transcription error. See 1986 Hearing, supra, at 37, 40-44 (Richard statement).

. See Cal.Penal Code § 261(a)(4) (“Where a person is at the time unconscious of the nature of the act, and this is known to the accused " (emphasis added)); Cal.Penal Code app. § 261(4) (Deering 1986); Md.Code Ann., Crim. Law § 3-304(a)(2) ("[T]he person performing the act knows or reasonably should know that the victim is [incapacitated]” (emphasis added)); Md.Code Ann., art. 27, § 463(a)(2) (Michie 1982); Mich. Comp. Laws § 750.520d(l)(c) ("The actor knows or has reason to know that the victim is [incapacitated]” (emphasis added)); Act of July 24, 1983, No. 158, sec. 1, § 750.520d, 1983 Mich. Pub. Acts 475, 478.

. Disregarding this bedrock American tradition, and rewriting the statute, the dissent asserts that when faced with- "two interpretations” of a criminal statute — one which imposes strict liability, the other which requires criminal intent — "the better view” is to opt for strict liability. Post at 778-79. This disturbing assertion is without precedent in our legal system. "The contention that an injury can amount to a crime only when inflicted by intention.... is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.” Morissette, 342 U.S. at 250, 72 S.Ct. 240.

.This crime indeed originated in statutory, not common, law. See Benefit of Clergy Act, 1575, 18 Eliz. I c. 7 (Eng.), in 4 Statutes of the Realm 617, 618 (1819).

. Contrary to the dissent's survey of cases involving § 2242(2), there is no “accepted understanding” among district courts in our circuit or anywhere else for the proposition that § 2242(2) is a strict-liability crime. Post at 783. Notably, in United States v. Ford, No. 11-cr-40116-KES, 2012 WL 4443000 (D.S.D.), affd 726 F.3d 1028 (8th Cir.2013), the same judge who presided over Bruguier’s trial decided — before either of the panel decisions in this case or United States v. Rouillard, 701 F.3d 861 (8th Cir.2012) (vacated March 4, 2013) — that § 2242(2) was not a strict-liability crime.
The district court not only instructed the jury in Ford of the prosecution’s burden to prove beyond a reasonable doubt that the defendant "knew that [the victim] was [incapacitated]” but also rejected the government's proposed strict-liability instruction that “[evidence that the rape victim was asleep, or intoxicated and drowsy, when the Defendant knowingly engaged in a sexual act with the victim, if proven beyond a reasonable doubt, is sufficient to support a finding of guilt.” Final Jury Instructions, Ford, No. 4:ll-cr-40116-KES-l (D.S.D. July 18; 2012), ECF No. 69 (emphasis added); Refused Jury Instruction # 5, Ford, No. 4:ll-cr-40116-KES-1 (D.S.D. July 18, 2012), ECF No. 60.
Further " 'illuminat[ing] the [legal] profession’s understanding’ of the law,” post at 783 (quoting United States v. Ross, 456 U.S. 798, 819, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)), the jury in United States v. Peters, 277 F.3d 963 (7th Cir.2002), was instructed that the government had to prove “that the Defendant ... knew that [the victim] was [incapacitated],” id. at 967 (emphasis added).

. Most states do not impose criminal liability without either (1) actual knowledge, e.g., Alaska Stat. § 11.41.420(3) ("offender knows” victim's condition), or (2) constructive knowledge, e.g., Ariz.Rev.Stat. Ann. § 13 — 140l(5)(b) (victim’s "condition is known or should have reasonably been known to the defendant”). See also D.C.Code § 22-3003(2). Some states place the burden of proof on the prosecution, e.g., Colo.Rev.Stat. § 18-3-402(l)(b); others make lack of knowledge an affirmative defense, e.g., Conn. Gen.Stat. § 53a-67(a).
No state in this circuit, except possibly Iowa whose highest court has not decided the question, imposes strict liability. See Ark. Code Ann. § 5 — 14— 102(e); Minn.Stat. *774 § 609.342, subd. l(e)(ii); Mo.Rev.Stat. § 556.061(5)(b); Neb.Rev.Stat. § 28-319(l)(b); N.D. Cent.Code § 12.1-20-03(l)(c), (e); State v. Jones, 804 N.W.2d 409, 414 (S.D.2011). Thus, the court’s opinion imposes no greater burden on Bruguier's federal prosecutors than South Dakota law would have imposed on state prosecutors if Bruguier's heinous act had occurred a few miles away under state jurisdiction rather than in Indian country. See Jones, 804 N.W.2d at 414 (“Because rape by intoxication is a serious felony and the Legislature has not indicated its clear intent to dispense with mens rea, [the state statute] must be read to include a knowledge element.”).